**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JANET M. PASCHETTE,**

        **Plaintiff,**

**-vs-**                                           **Case No. 6:11-cv-442-Orl-31GJK**

**WELLS FARGO BANK, N.A. and JOHN**
**DOE LOAN OWNER, INC.,**

        **Defendants.**
_____/

# ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 7) filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and the response (Doc. 20) filed by the Plaintiff, Janet M. Paschette ("Paschette"). Wells Fargo has also filed a Notice of Supplemental Authority (Doc. 21), which the Court has reviewed.

**I.**    **Background**

According to the allegations of her complaint (Doc. 23), which are accepted as true for purposes of resolving this motion to dismiss, Paschette owns a home in Brevard County, and Wells Fargo is the loan servicer for the mortgage on her home. Although not mentioned in the complaint, the parties agree that Wells Fargo filed foreclosure proceedings against Paschette in state court some months before Paschette filed the instant suit. The instant suit was also filed in state court, before being removed to this court on May 12, 2011.

Paschette asserts three claims against Wells Fargo.[1]  In Count I, she alleges a violation of the Real Estate Settlement Procedures Act ("RESPA").  (Doc. 23 at 2-4).  In Count II, she alleges a violation of the Florida Consumer Collection Practices Act ("FCCPA").  (Doc. 23 at 4-5).  And in Count III, she alleges a violation of the Truth in Lending Act ("TILA").  (Doc. 23 at 5-6).

All three claims have their genesis in a letter sent by Paschette's counsel to Wells Fargo on September 2, 2010.  (Doc. 23 at 2).  Paschette alleges that she sent the letter, *inter alia*, as a Qualified Written Request pursuant to RESPA and as a request for identification of the current owner of the note and mortgage on her home under TILA, and that the response she received fell short of satisfying the requirements of either statute.  In addition, she contends that she notified Wells Fargo in the letter that she was represented by counsel, but that despite this, Wells Fargo subsequently contacted her directly, in violation of the FCCPA.

## II.     Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most

---

[1] It appears that the only claim alleged against the John Doe defendant is Count III.

favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.  Analysis**

    **A.  Contact with represented party**

Wells Fargo first seeks to have this action dismissed as a sanction on the grounds that the September 2 letter violated Rule 4-4.2(a) of the Rules Regulating the Florida Bar, which prohibits attorneys from "communicat[ing] about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the

other lawyer." After reviewing the parties' arguments, the Court finds that the dispute is too fact-reliant to be resolved in the context of a motion to dismiss. In addition, even assuming *arguendo* that Wells Fargo's assertions are true, the harm resulting from Paschette's attorney's (allegedly) improper communication falls short of warranting dismissal of Paschette's complaint.

### B.     *Colorado River*

Wells Fargo also seeks to have this matter stayed pending resolution of the state court foreclosure case pursuant to *Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Although federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," they may defer to a parallel state proceeding under "limited" and "exceptional" circumstances. *Id.* at 817-818, 96 S.Ct. 1236. The principles of this doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'." *Id.* at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). Among the factors the district court should consider in determining whether such exceptional circumstances exist are

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1294-5 (11th Cir. 1998) (summarizing *Moses H. Cone Memorial Hospital v. Mercury Constr. Co.*, 460 U.S. 1, 16-26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The decision whether to dismiss "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily

weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927. The weight of each factor varies on a case-by-case basis, depending on the particularities of that case. *Id.* One factor alone can be the sole motivating reason for the abstention. *Id.*

The first step in determining whether to apply the Colorado River abstention doctrine is to inquire whether the concurrent state and federal proceedings are "parallel." Exact parallelism is not required; it is enough if the two cases involve substantially the same parties and substantially the same issues. *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). After reviewing the parties' papers, the Court finds that this threshold requirement is not met in this case. The parties in the two cases are substantially the same, but the issues, though related, are not substantially similar. The state court action is primarily concerned with the right to foreclose the mortgage and the right to possession of the mortgaged property, neither of which is at issue here.[2] There is some overlap between the two cases, and raising of additional claims or defenses might increase that overlap, but as things now stand the cases are not similar enough to justify abstention.

### C. Failure to state a claim

Wells Fargo seeks dismissal of the the RESPA claim in Count I for three reasons. First, it contends that the allegations of the complaint show that it did, in fact, make a timely response to Paschette's Qualified Written Request. However, Paschette does not contend that Wells Fargo missed the deadline for responding; rather, she asserts that the response, though made within the deadline, was inadequate – and therefore no timely response has been made.

---

[2] Wells Fargo contends that it intends to file a counterclaim for foreclosure in this case, but the Court will not factor that into its *Colorado River* analysis before it occurs.

Wells Fargo also contends that Paschette's letter does not constitute a Qualified Written Request, which is defined by statute as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Wells Fargo asserts that the only allegation set forth in Paschette's correspondence involved questions as to the identity of the owner of the note – something not covered by RESPA. Contrary to Wells Fargo's assertion, however, the putative Qualified Written Request included a contention that some of Paschette's mortgage payments "ha[d] not been properly credited toward the balance due". (Doc. 20-1 at 4-5). Wells Fargo fails to address the effect of these allegations.

Finally, Wells Fargo contends that the RESPA count fails to state a claim because Paschette has not properly pled that she suffered damages. On this point, Wells Fargo is correct. RESPA permits borrowers to recover (1) actual damages or (2) up to $1,000 in statutory damages against defendants with a "pattern or practice of noncompliance" with RESPA. Paschette has not pled actual damages or any facts that would support a finding of a pattern or practice of RESPA noncompliance on Wells Fargo's part.[3] Count I will be dismissed without prejudice.

In Count II, Paschette contends that Wells Fargo violated the FCCPA by contacting her in an effort to collect a debt, even though the company knew she was represented by counsel. Wells

---

[3] Paschette asserts that she is entitled to recover damages for emotional distress under RESPA. Though this question appears to be unsettled in the federal courts, it is not relevant here, as Paschette has not pled that she suffered any emotional distress.

Fargo contends that the contact was permitted because Paschette initiated it. For her part, Paschette contends that she informed Wells Fargo well before the contacts at issue that she was represented by counsel and any communication must go through her counsel's office, thereby in effect revoking Wells Fargo's authority to contact her directly. At least on this point, this is a factual dispute that cannot be resolved at this stage of the proceedings. The motion will be denied as to Count II.

In the same letter to Wells Fargo that was intended as her Qualified Written Request under RESPA, Paschette requested the identity of the loan owner. In Count III, Paschette asserts that Wells Fargo failed to provide this information, and that this refusal violated TILA. Wells Fargo contends that Count III fails to set forth the provision of TILA it allegedly violated.

Section 1641(f) of the TILA provides that upon written request a servicer "shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f). However, as Paschette admits, TILA provides a private right of action only against creditors, not servicers. 15 U.S.C. § 1640(a). Thus, even assuming Wells Fargo violated this provision, Paschette cannot assert a TILA claim against it for doing so. Count III will be dismissed as to Wells Fargo.

### D.     Jury trial waiver

Paschette's mortgage contains a waiver of the right to trial by jury "in any action, proceeding, claim, or counterclaim . . . arising out of or in any way related to this Security Instrument or the Note." (Doc. 7-2 at 13). Paschette argues that the instant action does not arise

out of the note or mortgage, and therefore the waiver does not apply.  However, this action is clearly "related to" the note, and that is enough to activate the waiver.

### IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**.  As set forth above, Count I is dismissed without prejudice, Count III is dismissed with prejudice as to Wells Fargo, only, and the Plaintiff's jury trial demand is hereby **STRICKEN**.  In all other respects, the motion is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 21, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party